**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

EDGAR HERNANDEZ, et al.,

Plaintiffs,

v.

PROGRESSIVE DIRECT INSURANCE COMPANY,

Defendant.

Case No. 2:25-cv-00771-GMN-NJK

**Order**

[Docket No. 73]

Pending before the Court is Plaintiffs' motion to compel. Docket No. 73. The Court has considered Plaintiffs' motion, Defendant Progressive Direct Insurance Company's response, and Plaintiffs' reply. Docket Nos. 73, 78, 80.

## I. BACKGROUND

This case arises from a car accident in which Matthew Martino admitted fault for rear-ending Edgar Hernandez's vehicle. Docket No. 73 at 4. Martino was driving a vehicle insured under his Progressive Direct Insurance Company policy, which provided up to $25,000 per person in bodily injury liability coverage. *Id.* Hernandez suffered injuries requiring treatment and, on April 30, 2021, presented Progressive with a demand for policy limits. *Id.* at 4. On May 13, 2021, Progressive offered Hernandez $4,659, less than his incurred medicals; therefore, on May 17, 2021, Hernandez filed suit against Martino in state court. *Id.* On July 28, 2021, Progressive offered Hernandez the $25,000 policy limit, which he rejected as untimely. *Id.* Progressive retained attorney Jennifer Insley-Micheri, of the law firm Dennett Winspear, to defend Martino in the state court litigation. *Id.*; *see also* Docket No. 78 at 2. In October 2022, Hernandez served a formal offer of judgment in the amount of $77,500, inclusive of attorneys' fees, costs, and interest, to Martino. Docket No. 1-2 at 6. Progressive rejected this offer. *Id.* In March 2023, a jury found Martino negligent and awarded Hernandez $74,050. Docket No. 73 at 4. The amended judgment, including attorneys' fees, costs, and interest, totaled $130,187.48. *Id.* On July 21, 2023, Dennett

Winspear tendered a check for $26,647.33, representing the policy limit and post-judgment interest only, and advised Martino that Progressive elected not to pay the balance and that Martino should retain personal counsel. *Id.* Plaintiffs Hernandez and Martino then filed the instant suit, alleging Defendant Progressive's bad faith handling of the underlying claim breached industry standards and Nevada regulations. *Id.* at 3.

Plaintiffs initially filed a motion to compel Defendant and Dennett Winspear to produce withheld documents. *See* Docket No. 34. That motion was fully briefed. *See* Docket Nos. 37, 38. On April 28, 2026, the Court denied Plaintiffs' motion to compel without prejudice. Docket No. 70. The Court explained that much of the parties' motion practice was devoted to arguing which standards and analysis apply to their dispute and that Judges in this District have ruled that at-issue waiver in the bad faith context is governed by the *Hearn* test. *Id.* at 3. Thus, the Court ordered that future conferral efforts and any future motion practice must track that standard. *Id.* The Court also explained the deficiencies in the parties' briefing and ordered that any future motion practice must more clearly explain what it is that Plaintiffs seek. *Id.* at 3-4. The Court ordered the parties to reengage in fulsome conferral efforts in the spirit of cooperation, and further ordered that any renewed briefing must be structured with meaningful discussion supported by legal authority as to each issue. *Id.* at 5.

The instant motion is Plaintiffs' renewed motion to compel claims notes from Defendant Progressive and the client file from Dennett Winspear. Docket No. 73.

## II. STANDARDS

"[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). When a party fails to provide discovery and the parties' attempts to resolve the dispute without Court intervention are unsuccessful, the opposing party may seek an order compelling that discovery. Fed. R. Civ. P. 37(a). The party seeking to avoid discovery bears the burden of showing why it should not be permitted. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Arguments against discovery must be supported by "specific examples and articulated reasoning." *U.S. E.E.O.C. v. Caesars Ent.*, 237 F.R.D. 428, 432 (D. Nev. 2006).

Parties are permitted to seek discovery of any nonprivileged matter that is relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). District courts enjoy wide discretion in deciding relevancy for discovery purposes.[1] *E.g.*, *Shaw v. Experian Info. Solutions, Inc.*, 306 F.R.D. 293, 296 (S.D. Cal. 2015). To be permissible, discovery must be "relevant to any party's claim or defense." *In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 563-64 (D. Ariz. 2016) (discussing impact of 2015 amendments to definition of relevance for discovery purposes). Relevance for the purpose of discovery is defined broadly. *See, e.g.*, *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019).

"Proportionality focuses on the marginal utility of the discovery being sought." *Guerrero v. Wharton*, 2017 WL 7314240, at *2 (D. Nev. Mar. 30, 2017) (citing *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 180 F. Supp. 3d 273, 280 n.43 (S.D.N.Y. 2016)). Proportionality is judged based on: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). "At bottom, proportionality is a 'common-sense concept' that should be applied to establish reasonable limits on discovery." *Guerrero v. Wharton*, 2017 WL 7314240, at *2 (D. Nev. Mar. 30, 2017) (quoting *Sprint Comm's Co. v. Crow Creek Sioux Tribal Court*, 316 F.R.D. 254, 263 (D.S.D. 2016)).

"Discovery is supposed to proceed with minimal involvement of the Court." *F.D.I.C. v. Butcher,* 116 F.R.D. 196, 203 (E.D. Tenn. 1986). Counsel should strive to be cooperative, practical and sensible, and should seek judicial intervention "only in extraordinary situations that implicate truly significant interests." *In re Convergent Techs. Securities Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985).

[1] Material may be discoverable even if not admissible at trial, Fed. R. Civ. P. 26(b)(1), and relevance for discovery purposes is broader than relevance for trial purposes, *see, e.g.*, *F.T.C. v. AMG Services, Inc.*, 291 F.R.D. 544, 552 (D. Nev. 2013).

## III. ANALYSIS[2]

Plaintiffs seek to compel entries from Progressive's privilege log and Dennett Winspear's privilege log. Docket No. 73. Each privilege log contains several categories of entries which Plaintiffs seek to compel. The parties dispute whether the subject entries are proportional, as well as whether attorney-client privilege and/or work product doctrine applies to these entries. The Court analyzes each of these issues and then considers each category of entries in turn.

### A. Proportionality

Defendant contends that all proportionally relevant materials that Plaintiffs seek have been produced, and that Plaintiffs' request for post-litigation correspondence between counsel and Progressive is not proportional to the needs of the case. Docket No. 78 at 5. Defendant contends that the importance of the issues at stake in the litigation weighs in favor of Defendant because post-litigation correspondence between defense counsel and Defendant is not a critical factor that will determine the outcome of this case. *Id.* Further, Defendant contends that this case involves an alleged pre-litigation failure to settle before counsel was retained, and that counsel's communications with Defendant concerned reporting on the status of litigation and relaying information regarding the potential outcome at trial. *Id.* Additionally, Defendant contends that counsel did not provide legal advice regarding Defendant's potential liability. *Id.* Defendant also contends that the remaining proportionality factors weigh in its favor. *Id.* at 6. Defendant contends that this matter is not of public interest sufficient to require the production of materials having no bearing on the outcome of this case. *Id.* Further, Defendant contends that Plaintiffs' counsel already deposed the claims adjuster involved in the claim pre-litigation and the attorney who represented Martino, and engaged in written discovery. *Id.* Additionally, Defendant contends that the discovery sought is not important to resolve the issues because Insley-Micheri's communications with Defendant have no bearing on the failure to settle issue. *Id.* Moreover, Defendant contends that the burden or expense outweighs any benefit because Insley-Micheri

[2] Any request not specifically granted in this order is denied.

represented the insured and provided a defense on liability and damages, but was not involved in any way in advising the insurer regarding the alleged failure to settle. *Id.*

Plaintiffs submit that Defendant misstates the case because it actually alleges failure to settle, failure to fully inform, failure to pay for independent counsel, and Defendant's refusal to resolve the matter after the excess judgment was entered. Docket No. 80 at 3. Further, Plaintiffs submit that Insley-Micheri: 1) warned Martino in May 2022 that Defendant should have accepted the original pre-litigation demand and that a jury could award significantly more; 2) wrote Martino in January 2023 that Defendant might not choose to pay any judgment above $25,000 and that he should consult his own independent attorney; and 3) advised Martino in a letter on January 27, 2023, that Defendant declined to settle above limits, declined to pay for independent counsel, and declined to provide any written assurance that it would pay any judgment above limits. *Id.* at 3-4. Thus, Plaintiffs submit that these facts place Defendant's post-suit handling, its communications with counsel, and its internal decisions squarely at issue. *Id.* Additionally, Plaintiffs submit that Nevada law recognizes that an insurer's duty in the bad-faith setting is not limited to reacting to an initial demand, and that the Nevada Supreme Court has held that, when an insurer fails to adequately inform the insured of a reasonable settlement opportunity, such failure can be a proximate cause of the insured's damages arising from a foreseeable settlement or excess judgment. *Id.* (citing *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 322 (2009)). Plaintiffs also submit that Nevada law recognizes the need for independent counsel where a conflict arises in the tripartite relationship, and that Defendant's response ignores these claims and then argues that post-litigation documents are irrelevant because Insley-Micheri did not evaluate the April 2021 rejection. *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Hansen*, 357 P.3d 338 (2015)).[3] Moreover, Plaintiffs submit that the withheld materials are relevant to at least four subjects: 1) Defendant's

[3] Plaintiffs also submit that Defendant waived the right to claim the materials are irrelevant or not proportional because Defendant did not raise these issues in its response to the previous motion to compel or during the parties' meet and confer efforts. *See* Docket No. 80 at 4 (citing Docket No. 37). However, Plaintiffs fail to cite any legal authority for this argument; therefore, the Court declines to consider it. *See* Docket No. 70 at 5 ("Any renewed briefing—by both parties—must also be structured so that meaningful discussion supported by legal authority is presented as to each issue").

continuing evaluation of settlement opportunities after it rejected the policy limits demand; 2) Defendant's duty to inform Martino that it was rejecting the policy limits demand; 3) Defendant's possible conflict of interest and whether it deliberately refused to fund independent counsel; and 4) Defendant's refusal to resolve the excess judgment after trial. Docket No. 80 at 4-5.

Plaintiffs have the better argument. As a threshold matter, the Court's prior Order explained that "Defendant fails to provide any authority supporting its withholding of documents on a privilege log on the basis that they are not relevant and/or not proportional." Docket No. 70 at 4. Despite the Court's Order, Defendant, once again, fails to cite any caselaw supporting its proportionality argument. *See* Docket No. 78 at 5:14-7:10. The Court finds that discovery into the subject claim handling entries is both relevant and proportional to the needs of the case. *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (quoting *Reavis v. Metro. Prop. & Liab. Ins. Co.*, 117 F.R.D. 160, 164 (S.D. Cal. 1987)) ("In a bad faith insurance claim settlement case, the 'strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue'").

**B. Attorney-Client Privilege**

Plaintiffs first submit that the withheld materials are not privileged because Defendant has not carried its threshold burden of showing that the privilege ever attached. Docket No. 73 at 11. Plaintiffs submit that adjuster claim notes with no attorney recipient are not attorney-client communications, blanket privilege designations are improper on their face, and communications with Dennett Winspear during the underlying defense were claim handling and not legal advice to Defendant. *Id.* at 11-12.

i. <u>Waiver</u>

In the alternative, Plaintiffs submit that attorney-client privilege has been waived in two independent ways. Docket No. 73 at 13. First, Plaintiffs submit that Martino has expressly waived the privilege and that the waiver reaches Defendant's side of the tripartite relationship. *Id.* at 13-14. Second, Plaintiffs submit that Defendant has impliedly waived the privilege under *Hearn*. *Id.* at 14-16. The Court considers each in turn.

a. Express Waiver

Plaintiffs submit that Dennett Winspear represented Martino in the underlying litigation and that the privilege belongs to the client. Docket No. 73 at 14 (citing NRS 49.095). Further, Plaintiffs submit that Martino expressly waived privilege and authorized Dennett Winspear and his insurer to release his complete client file, including all documents, correspondence, and records directly to Plaintiffs' counsel. *Id.* Additionally, Plaintiffs submit that Insley-Micheri confirmed in her deposition that, had Martino asked her about her communications with Defendant concerning settlement decisions and case evaluation, she would have had no reservation about disclosing those communications to him. *Id.* (citing Docket No. 73-8 at 10 (Insley-Micheri's deposition transcript)). Moreover, Plaintiffs submit that Martino is also, independently of the waiver, entitled to the entire file from Dennett Winspear under State Bar of Nevada Standing Committee on Ethics & Professional Responsibility, Formal Opinion No. 28. *Id.* Plaintiffs submit that, when an insurer retains counsel to defend its insured, the insured is the primary client, defense counsel owes undivided loyalty to the insured, and any privilege between the insurer and defense counsel concerning the defense of the insured is held jointly with the insured and cannot be invoked against him. *Id.* (citing State Bar of Nev. Standing Comm. on Ethics & Pro. Resp., *Formal Op. No. 28* (Nov. 19, 2002, amended Sept. 24, 2007), https://nvbar.org/wp-content/uploads/opinion_28.pdf). Therefore, Plaintiffs submit that Martino's waiver reaches every Dennett Winspear communication and every Defendant-to-Dennett Winspear communication concerning the defense of Martino. *Id.* Plaintiffs submit that this includes the entirety of the PROG 000001-000222 range and the corresponding CLAIMS Bates ranges. *Id.*

Defendant contends that the Nevada Supreme Court expressly recognizes that an attorney-client privilege exists in the tripartite relationship among an insurer, an insured, and counsel retained to represent the insured. Docket No. 78 at 13 (citing *Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 152 P.3d 737, 742 (2007). Further, Defendant contends that one client cannot waive the privilege of another without their consent. Docket No. 78 at 13 (citing *QBE Ins. Corp. v. Russo*, 2022 WL 22886816, at *4 (D. Nev. May 5, 2022)). Therefore, Defendant

contends that, even though Martino has expressly waived privilege via the signed waiver, said waiver does not impact Defendant's side of the tripartite relationship. Docket No. 78 at 14.

In reply, Plaintiffs submit that the communications they seek concern the defense of Martino, the advice he was given about settlement opportunities, the warnings he received about excess exposure, and the conflict that arose once Defendant refused to settle above limits or fund independent counsel. Docket No. 80 at 9. Further, Plaintiffs submit that Insley-Micheri testified that, if Martino had asked her about her communications with Defendant concerning settlement decisions and case evaluation, she would have had no reservation about disclosing them to him. *Id.* Additionally, Plaintiffs submit that, at a minimum, Martino's waiver extinguishes any privilege held solely by Martino and requires production of the Dennett Winspear file as to communications about his defense, settlement opportunities, excess exposure, and his requests for independent counsel and protection. *Id.* at 9-10. Moreover, Plaintiffs submit that, if Defendant contends some narrower subset remains privileged on its side of the relationship, it had the burden to identify that subset with particularity and explain why, and that Defendant did not do so. *Id.* at 10.

Defendant has the better argument. Plaintiffs fail to cite any caselaw in which courts in this District or the State of Nevada have applied State Bar of Nevada Standing Committee on Ethics & Professional Responsibility, Formal Opinion No. 28. *See* Docket Nos. 73, 80. Defendant cites authority from the Nevada Supreme Court and this District expressly recognizing that an attorney-client privilege exists in the tripartite relationship among an insurer, an insured, and counsel retained to represent the insured. *See* Docket No. 78 at 13 (citing *Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 152 P.3d 737, 742 (2007); and *QBE Ins. Corp. v. Russo*, 2022 WL 22886816, at *4 (D. Nev. May 5, 2022)). Therefore, the Court finds that Martino's express waiver of privilege does not reach Defendant's side of the tripartite relationship.

b. Implied Waiver

The Court's prior order explained that "[j]udges within this District have ruled that at-issue waiver in the bad faith insurance context is governed by the *Hearn* test." Docket No. 70 at 3 (citing *Wood v. Nautilus Ins. Co.*, 2021 WL 5415330, at *2-3 (D. Nev. Nov. 18, 2021); and *Spargo v. State Farm Fire & Cas. Co.*, 2017 WL 2695292 (D. Nev. June 22, 2017)). Therefore, the Court

ordered that any future motion practice must track this standard. Docket No. 70 at 3. Under *Hearn*, privilege is impliedly waived when: (1) assertion of the privilege was a result of some affirmative act; (2) the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to its defense. *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975). In applying this test, the court requires that "[a] substantial showing of merit to plaintiff's case must be made before a court should apply the exception to the attorney-client privilege defined herein." *Spargo*, 2017 WL 2695292, at *4 (quoting *Hearn*, 68 F.R.D. at 581). The Ninth Circuit has stated that, "[i]n *Hearn*, an overarching consideration is whether allowing the privilege to protect against disclosure of the information would be 'manifestly unfair' to the opposing party." *Home Indemnity Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995).

Plaintiffs submit that Defendant has impliedly waived privilege under the three-part *Hearn* test. Docket No. 73 at 15 (citing *Hearn v. Rhay*, 68 F.R.D. 574, 576 (E.D. Wash. 1975); *Spargo*, 2017 WL 2695292, at *1; and *Wood*, 2021 WL 5415330, at *1). For the first prong, Plaintiffs submit that Defendant asserted the privilege through the affirmative act of answering the bad faith complaint and defending it on the ground that its handling of the underlying claim was reasonable. *Id.* (citing *Spargo*, 2017 WL 2695292, at *4; and *Wood*, 2021 WL 5415330, at *2). For the second prong, Plaintiffs submit that Defendant's evaluation of liability and damages, its reasoning behind the May 13, 2021, counteroffer, the July 28, 2021, post-suit tender of policy limits, the rejection of other settlement offers, and the post-verdict refusal to pay the excess judgment are all squarely at issue. *Id.* Further, Plaintiffs submit that Defendant's retained expert, Joanna Y. Moore, defends Defendant's conduct on the ground that Defendant "kept an open mind and re-evaluated the facts as they developed." *Id.* (citing Docket No. 73-6 at 13 (Moore's expert report)). Plaintiffs submit that the very communications Defendant is withholding are documents that show whether the defense is true. *Id.* (citing *Wood*, 2021 WL 5415330, at *2). For the third prong, Plaintiffs submit that the Insley-Micheri communications and reports, specifically Entry Nos. 194, 212, and 223, go to whether and when Defendant should have tendered the limit, why it did not do so timely, and why it elected not to settle. Docket No. 73 at 15. Further, Plaintiffs submit that this evidence does

not exist anywhere else and that Insley-Micheri so testified. *Id.* (citing Docket No. 73-8 at 10, 11). Plaintiffs further submit that they easily clear the substantial showing of merit threshold required by *Spargo* because of Defendant's sub-medicals counteroffer, Defendant's untimely tender of limits after suit was filed, the excess verdict and excess amended judgment, and Defendant's deliberate refusal to pay the excess. Docket No. 73 at 15-16 (citing *Spargo*, 2017 WL 2695292, at *4; and Docket No. 73-5 at 13-14 (Plaintiffs' insurance practices expert's report)). Further, Plaintiffs submit that their insurance practices expert, Stephen L. Strzelec, opined that Defendant's conduct fell below industry standards and Nevada regulations and constituted "a reckless disregard of their insured's interests." Docket No. 73 at 16 (citing Docket No. 73-5 at 58). Plaintiffs submit that this showing is far more significant than the showing held insufficient in *Spargo*, where the plaintiff had essentially nothing beyond a contested attorney recollection. Docket No. 73 at 16 (citing *Spargo*, 2017 WL 2695292, at *7-8).

Defendant contends that it has not waived the attorney-client privilege. Docket No. 78 at 10. For the first prong of the *Hearn* test, Defendant contends that the assertion of privilege has to be the result of some affirmative act such as filing suit. *Id.* For the second prong, Defendant contends that the privileged information is not at issue because this case deals with an allegedly unreasonable pre-litigation failure to settle within Defendant's policy limits, and that this pre-litigation activity did not involve counsel whose communications Plaintiffs now seek to obtain. *Id.* Specifically, Defendant contends that Insley-Micheri was only retained after suit was filed, she did not provide advice to Defendant regarding its potential exposure for an alleged failure to settle, and she was not involved in Defendant's decision to offer the policy limits. *Id.* Further, Defendant contends that it has not asserted advice of counsel as a defense in the current action, nor did it rely upon counsel in arriving at its determination to tender limits. *Id.* Defendant contends that this case is unlike *Wood*, where there were multiple communications between the insurance carrier and its coverage attorney regarding the decision to deny coverage and the defense counsel stated that she evaluated each of the four re-tenders prior to the filing of the bad faith action. *Id.* (citing *Wood*, 2021 WL 5415330). For the third prong, Defendant contends that allowing the privilege would not deny the opposing party access to vital information because Plaintiffs have

already deposed both Insley-Micheri and the adjuster who evaluated the claim pre-litigation. Docket No. 78 at 11. Further, Defendant contends that Plaintiffs have been provided with the pre-litigation claims diary clearly delineating how the decisions were made to respond to the demand for policy limits. *Id.*

In reply, Plaintiffs again submit that all three *Hearn* elements are met. Docket No. 80 at 10. Plaintiffs reiterate their arguments as to each of the prongs, as well as the opinion of Defendant's expert. *Id.* Plaintiffs again submit that they have made the required substantial showing of merit. *Id.* at 11.

As to the first and second prongs of the *Hearn* test, the parties dispute whether Defendant has asserted the privilege through an affirmative act and put the privileged information at issue. "Even if the insurer does not expressly assert advice of counsel as a defense to bad faith liability, a majority of courts hold that the plaintiff may still be entitled to discover the mental impressions or opinions of the insurer's coverage attorney because they are directly relevant to the issue of bad faith." *Spargo*, 2017 WL 2694292 at *4. Although Defendant contends that the pre-litigation activity did not involve counsel whose communications are at issue, the issues in this case clearly extend beyond pre-litigation activity. *See* Docket No. 1-2 at 7-20 (Plaintiffs' complaint). Plaintiffs allege that Defendant's mishandling of the underlying claim also involves its rejection of later settlement offers, handling of a possible client conflict, decision to not fund independent counsel, and the post-verdict refusal to pay the excess judgment. *See* Docket No. 80 at 3. Defendant submits that its claim handling and valuation was reasonable and complied with Nevada law. Docket No. 10 at 6 (Defendant's answer). Further, Defendant's expert submits that "[Defendant] kept an open mind and re-evaluated the facts as they developed." Docket No. 73-6 at 13. While Defendant contends that it has not asserted advice of counsel as a defense in this action and that it did not rely on the advice of counsel when deciding to tender limits, its assertion that it did not act in bad faith as to its post-litigation handling makes the insurer's coverage advice dispositively important. *See Wood*, 2021 WL 5415330, at *2 ("The attorney-client privilege may be impliedly waived in bad faith cases because the insurer's assertion that it did not act in bad faith makes the insurer's coverage advice dispositively important"). From Plaintiffs' submissions, Insley-Micheri:

1) informed Martino about Hernandez's $99,999.00 settlement demand in May 2022; 2) informed Martino about Hernandez's $77,500.00 offer of judgment in October 2022; 3) informed Martino about Hernandez's proposed settlement/covenant not to execute and estimated the likely verdict value to be in the $80,000-$125,000 range on January 20, 2023; and 4) informed Martino that Defendant declined to settle above limits, pay for independent counsel, and provide Martino indemnity going into trial. *See* Docket No. 73-5 at 97-98, 101, 102-05 (excerpts from Plaintiffs' expert's report containing Insley-Micheri's communications to Martino). Insley-Micheri's deposition testimony also repeatedly leaves the door open as to extent of her involvement with Defendant concerning its evaluation and claims handling. *See* Docket No. 73-8 at 10 (responding "I guess it's possible" when asked, "Is it possible that the redactions revolve around your conversations with Progressive about the evaluation and the reasons for sending the offer of judgment?); 11 (responding "It's possible," when asked, "there are redacted entries; it's possible those are communications discussing your evaluation of the claim?"); 13 (responding that she does not recall her evaluation of the value of the claim as of May 2, 2022, and that it may be written down somewhere); 14 (responding that she does not recall if she was asked to give an opinion or did give an opinion to Defendant with regard to the offer that was made in the amount of $99,999, and responding that it is possible that claim notes redactions relate to communications she had with Defendant about the offer); 16 (responding "yes" when asked whether "[she] believe[s] [she] would have sent a letter to Progressive about the offer of judgment"); 17 (responding "I didn't view it as a conflict," when asked, "You don't see a potential for conflict of shifting potential liability from the insured to the insurer in the tripartite relationship?"). Defendant contends that this case is unlike *Wood* because that case involved multiple communications between the insurance carrier and its coverage attorney regarding the decision to deny coverage and the defense counsel stated that she evaluated each of the four re-tenders prior to the filing of the bad faith action. This case, however, also appears to involve significant, and possibly critical, communications between Defendant and Insley-Micheri after the underlying lawsuit was filed. *See Wood v. Nautilus Ins. Co.*, 2021 WL 5415330, at *3 (D. Nev. Nov. 18, 2021). Thus, the Court finds that Plaintiffs satisfy the first and second prong of the *Hearns* test.

As to the third prong, the parties dispute whether application of the privilege would deny Plaintiffs access to vital information. Given the aforementioned lack of clarity from Insley-Micheri's deposition, the Court finds unpersuasive Defendant's contention that the privilege does not deny Plaintiffs' access to vital information because Plaintiffs have already deposed Insley-Micheri. *See* Docket No. 73-8 at 10-11. After reviewing Insley-Micheri's deposition, the subject communications appear vital to evaluate the extent of her involvement with Defendant concerning its evaluation and claims handling. Further, Defendant's contention that Plaintiffs already have the pre-litigation claims diary is unavailing given that Defendant's litigation handling is also at issue. Additionally, unlike in *Nguyen v. Shelter Mut. Ins. Co.*, where the plaintiffs only generally argued that the attorney-client privileged communications are vital to their defense because the communications would support their bad-faith claim, Plaintiffs here have provided sufficiently specified argument as to why the communications are vital to understanding whether and when Defendant should have tendered the policy limit, why it did not do so in a timely manner, and why it elected not to settle. *See* 2025 WL 343174, at *7 (D. Nev. Jan. 29, 2025). The Court finds that the relevant mindset cannot be established by objective evidence that is already available to the parties without resorting to the subject privileged communications. *See Thompson v. Dennis Widmer Constr., Inc.*, 2021 WL 1187045, at *6 (D. Or. Mar. 29, 2021) (citing *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326-27 (9th Cir. 1995)). Thus, the Court finds that Plaintiffs satisfy the third prong of the *Hearns* test.

As to the substantial showing of merit threshold required by *Spargo*, the Court finds that Plaintiffs have shown that they have a reasonably viable bad faith claim. *See* 2017 WL 2695292, at *7. Unlike the showing held insufficient in *Spargo*, where the plaintiff had not provided much detail for her allegation that the insurer unreasonably undervalued her claim and forced her to engage in prolonged litigation to recover policy limits, Plaintiffs here submit that Defendant's sub-medicals counteroffer, Defendant's untimely tender of limits after suit was filed, the excess verdict and excess amended judgment, and Defendant's deliberate refusal to pay the excess all support their bad faith claim. *See id.* These allegations, coupled with Insley-Micheri's deposition testimony, constitute much more than the contested attorney recollection held insufficient in

*Spargo*. *See id.* Further, Plaintiffs support their argument with the report of insurance practices expert Strzelec. Docket No. 73-5. Strzelec submits that Defendant "elected to ignore the insured's interests and to gamble with their insured's financial well-being by rejecting the policy limit demand," and that Defendant "acted recklessly and without regard to the insured's interests in the adjustment of the claim." *Id.* at 58; *see also Nguyen*, 2025 WL 343174, at *7 (finding that the combination of the insurer's 30(b)(6) witness testimony and Strzelec's expert opinion are enough evidence to show that the plaintiffs' bad faith claim is reasonably viable). Therefore, the Court finds that Defendant has impliedly waived its right to assert attorney client privilege for its communications with attorney Insley-Micheri and the law firm Dennett Winspear.

**C. Work Product Doctrine**

"Although the attorney-client privilege and the work product doctrine at times overlap, they are separate inquiries." *Wood v. Nautilus Ins. Co.*, 2021 WL 5415330, at *3 (D. Nev. Nov. 18, 2021). "Unlike the attorney-client privilege, federal law governs the work-product privilege in diversity suits." *Nguyen v. Shelter Mut. Ins. Co.*, 2025 WL 343174, at *7 (D. Nev. Jan. 29, 2025) (first citing *Frontier Refining, Inc. v. Gorman–Rupp, Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998); and then citing *In re California Pub. Utilities Comm'n*, 892 F.2d 778, 778–81 (9th Cir. 1989)). Under Federal Rule of Civil Procedure 26(b)(3)(A), discovery is protected work product if it is "prepared in anticipation of litigation or for trial by or for another party or its representative." *See also In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004). The Federal Rules of Civil Procedure distinguish between ordinary work product and opinion work product. *See* Fed. R. Civ. P. 26(b)(3)(A). Ordinary work product is discoverable if the requesting party shows a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). But, "[i]f the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Thus, opinion work product is only discoverable if the requesting party shows that mental impressions are at issue in the case and the need for the material is compelling. *Nguyen*, 2025 WL 343174, at *8 (quoting

*Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992)). "The party claiming work product immunity has the burden of proving the applicability of the doctrine." *Spargo v. State Farm Fire & Cas. Co.*, 2017 WL 2695292, at *2 (D. Nev. June 22, 2017) (citing *Kandel v. Brother Intern. Corp.*, 683 F.Supp.2d 1076, 1083-84 (C.D. Cal. 2009)).

Plaintiffs first submit that the work product doctrine does not protect ordinary course claim handling, and that they have demonstrated substantial need as to specific withheld entries.[4] Docket No. 73 at 12. Specifically, Plaintiffs submit that Entry Nos. 193, 194, 195, 198, 199, 200 are the only contemporaneous record of why Defendant authorized, or refused to authorize, settlement at the precise moment a within-limits resolution was still possible. Docket No. 73 at 13. Further, Plaintiffs submit that no deposition can reconstruct that contemporaneous evaluation and that Insley-Micheri so testified. *Id.* Plaintiffs submit that Entry No. 212 is a pre-trial report in which defense counsel formally communicated the verdict range, liability assessment and recommended settlement posture to Defendant on the eve of trial. *Id.* Further, Plaintiffs submit that the reasonableness of Defendant's decision to try the case rather than settle cannot be evaluated without it, and no substitute exists. *Id.* Plaintiffs submit that Entry Nos. 217, 219, and 223 constitute the only record of Defendant's contemporaneous reasoning for refusing to resolve the matter at that time. Docket No. 73 at 13. Further, Plaintiffs submit that Insley-Micheri confirmed she does not have an independent recollection sufficient to reconstruct these communications. *Id.* (citing Docket No. 73-8 at 10). Additionally, Plaintiffs submit that opinion work product yields where the mental impressions of the insurer's agents are directly at issue and the need is compelling. Docket No. 73 at 16 (citing *Holmgren*, 976 F.2d at 577; *Spargo*, 2017 WL 2695292, at *3; and *Wood*, 2021 WL 5415330, at *3). Plaintiffs submit that both elements are present here. Docket No. 73 at 16.

---

[4] The Court notes that the privilege log attached to Plaintiffs' motion is different from that attached to Defendant's response as to the privileges asserted for each entry. *Contrast* Docket No. 73-1, *with* Docket No. 78 at 30-51. Defendant's privilege log does not assert work product doctrine as a basis for withholding several of the entries Plaintiffs seek, specifically Entry Nos. 193-95, 198-200, 217, 219. *See* Docket No. 78 at 47, 49. Defendant's privilege log asserts work product doctrine as a basis for withholding Entry Nos. 4, 7, 8, 10, 11, 13, 15, 16, 19, 20, 24, 25, 27-30, 35, 38, 42, 46, 51, 53, 55, 60, 72, 73, 79, 82, 85, 92, 96, 109, 116, 212, 223. *See* Docket No. 78 at 30-51.

Defendant contends that Plaintiffs have failed to demonstrate a substantial showing of need for materials protected by the work product doctrine. Docket No. 78 at 11. Further, Defendant contends that the preservation of the privilege would not deny the opposing party access to vital information; thus, Plaintiffs are not entitled to the confidential opinions, mental impressions or legal theories shared by Defendant's retained counsel to the adjuster, nor any subsequent mental impressions of the adjuster based on those opinions, impressions, or theories. *Id.* Additionally, Defendant contends that the litigation purpose of the correspondence between Defendant's agents and counsel so permeates the non-litigation purpose of the insurer's investigation that all materials listed within Defendant's privilege log should be protected work product. *Id.* (citing *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 628 (D. Nev. 2013)). Moreover, Defendant contends that Plaintiffs improperly attempt to obtain information containing legal advice as well as legal theories and strategy of Defendant which, it contends, is exactly the type of information that should be protected under the work product doctrine. Docket No. 78 at 13.

In reply, Plaintiffs submit that documents generated in the ordinary course of business are not protected even if litigation is anticipated; therefore, in a bad faith case, the insurer's contemporaneous evaluation, valuation, settlement authority, and exposure analysis are part of ordinary claim handling. Docket No. 80 at 8. Further, Plaintiffs submit that they have established substantial need for the specific entries identified in the motion. *Id.* Additionally, Plaintiffs submit that the items at issue reflect why Defendant did or did not authorize settlement when a within-limits resolution was possible, and that depositions cannot replace those contemporaneous records. *Id.* at 8-9. Moreover, Plaintiffs submit that Insley-Micheri testified that the March 24 and 25 entries likely related to evaluation and the reasons for the offer, and that she did not have sufficient independent recollection to reconstruct similar communications before trial. *Id.* at 9. Lastly, Plaintiffs submit that Defendant's mental impressions about settlement, excess exposure, the need to inform its insured, the need for independent counsel, and the refusal to satisfy the judgment are themselves part of the bad faith claim. *Id.*

Plaintiffs have the better argument. Defendant's privilege log and briefing fail to specify whether the subject work product doctrine entries are ordinary work product or opinion work

product; therefore, the Court considers each standard in turn. To the extent the subject entries classify as ordinary work product, the Court finds that Plaintiffs have demonstrated a substantial showing of need and cannot obtain their substantial equivalent by other means. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). The subject entries are the only record of why Defendant authorized, or refused to authorize, settlement at the various moments in which it was a possibility. Further, Insley-Micheri's deposition testimony supports Plaintiffs' argument that this information cannot be obtained by other means because she repeatedly left the door open as to the extent of her involvement with Defendant concerning its evaluation and claims handling. *See* Docket No. 73-8 at 10 (responding "I guess it's possible" when asked, "Is it possible that the redactions revolve around your conversations with Progressive about the evaluation and the reasons for sending the offer of judgment?); 11 (responding "It's possible," when asked, "there are redacted entries; it's possible those are communications discussing your evaluation of the claim?"); 13 (responding that she does not recall her evaluation of the value of the claim as of May 2, 2022, and that it may be written down somewhere); 14 (responding that she does not recall if she was asked to give an opinion or did give an opinion to Defendant with regard to the offer that was made in the amount of $99,999, and responding that it is possible that claim notes redactions relate to communications she had with Defendant about the offer); 16 (responding "yes" when asked whether "[she] believe[s] [she] would have sent a letter to Progressive about the offer of judgment").

To the extent the subject entries classify as opinion work product, the Court finds that both elements for the discovery of opinion work product are met here. First, "[i]n a bad faith insurance claim settlement case, the 'strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue.'" *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (quoting *Reavis v. Metro. Prop. & Liab. Ins. Co.*, 117 F.R.D. 160, 164 (S.D. Cal. 1987)). Second, Plaintiffs' need for the subject entries is compelling because this information is not available elsewhere. As discussed above, Plaintiffs were not able to learn the extent of Insley-Micheri's involvement in Defendant's evaluation and claim handling during her deposition. Further, Plaintiffs have put forth sufficient entry-specific argument to show that the need is compelling. Given that the Court finds that Defendant impliedly waived attorney-

client privilege as to its communications with Insley-Micheri and law firm Dennett Winspear, the Court also finds that attorney-client privilege does not prevent disclosure of the subject entries. *See* Fed. R. Civ. P. 26(b)(3)(B); *see also Spargo*, 2017 WL 2695292, at *3; *see also Wood*, 2021 WL 5415330, at *4.

**D. Progressive Privilege Log**

i. Solo Claim Diary Entries

Plaintiffs submit that these entries are claim notes authored by a Progressive employee with no recipient. Docket No. 73 at 6. Further, Plaintiffs submit that solo claim diary entries by Progressive personnel that are not communications between attorney and client do not qualify for attorney-client privilege. *Id.* Plaintiffs object to the withholding of Entry Nos. 1-144, and 147-171. *Id.* Further Plaintiffs submit that these entries contain subcategories that require additional comment.[5] *Id.* The subject entries are described as, "Claim Note Entry re: communications with Dennett Winspear." *See* Docket No. 73-1; *see also* Docket No. 78 at 30-51. Plaintiffs submit that internal adjuster claim notes without an attorney recipient are not attorney-client communications protected by attorney-client privilege. Docket No. 73 at 10 (citing *Wardleigh v. Second Jud. Dist. Ct. In & For Cnty. of Washoe*, 891 P.2d 1180, 1184 (1995)). Additionally, Plaintiffs submit that the entries on the days surrounding the March 24-25, 2022, offer of judgment, the entries leading up to trial, and the entries during trial fall into this category because Insley-Micheri testified that those entries reflect Defendant's evaluation of the claim and reasoning about settlement, not legal advice she gave Defendant about Defendant's own liability. *Id.* at 11 (citing Docket No. 73-8 at 10 (Insley-Micheri's deposition transcript)).

Defendant contends that "claims notes are notes placed into the system by Progressive employees to memorialize claim activity. They do not have a recipient but can be viewed by Progressive claims employees." Docket No. 78 at 7. Further, Defendant contends that "the fact that there is no recipient listed to a claim note is of no consequence since there is no specific

---

[5] The Court considers the entries in the more specific subcategories, "Claims Legal" and "Billing/Invoice," on their own merits in their respective sections below. Therefore, this category refers to Entry Nos. 1-6, 9-52, 54, 56-73, 75, 78, 79, 82-86, 88, 89, 91, 92, 96, 97, 100-113, 119, 120, 122, 124, 127, 128, 130, 131, 135-141, 143, 144, 147-152, 154-156, 158-171.

recipient to a claims note entry." *Id.* at 8. Additionally, Defendant contends that "there are also claims diary entries that contain copies of email communications between the claims adjuster and defense counsel. These are clearly privileged communications and the privilege log clearly states that the communications are between defense counsel and Progressive." *Id.*

In reply, Plaintiffs submit that a solo claim diary entry does not become privileged merely because the insurer labels the whole file "post litigation communications" or "mental impressions of adjuster." Docket No. 80 at 6. Further, Plaintiffs submit that claim notes that do not have a recipient describe an internal business record of claim activity are not privileged. *Id.* Additionally, Plaintiffs submit that Defendant cannot convert its own claim handling notes into privileged material by placing them in a system visible to claims employees. *Id.*

Plaintiffs have the better argument. As a threshold matter, the Court's prior order required that, "[a]ny renewed briefing—by both parties—must also be structured so that meaningful discussion supported by legal authority is presented as to each issue." Docket No. 70 at 5. Despite the Court's order, Defendant's argument as to why these specific entries are privileged consists of just a few sentences. *See* Docket No. 78 at 7:27-8:6. Further, Defendant fails to cite any legal authority for the proposition that claim notes that do not have a recipient but that can be viewed by other claims personnel are privileged. *See id.* In short, Defendant has not met its burden to justify the assertion of privilege. *See PlayUp, Inc.*, 2026 WL 1079397, at *1 (citing *Eureka Fin. Corp. v. Hartford Acc. & Indem. Co.*, 136 F.R.D. 179, 183 (E.D. Cal. 1991)) ("If the privilege is worth protecting, a litigant must be prepared to expend some time to justify the assertion of the privilege"); *see also Canarelli v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 464 P.3d 114, 120 (2020) (citing *Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995)) ("The party asserting the privilege has the burden to prove that the material is in fact privileged").

Even assuming Defendant had put forth more fulsome argument, the Court finds that Defendant has impliedly waived attorney-client privilege into its communications with Insley-Micheri and Dennett Winspear and that Plaintiffs have sufficiently demonstrated that they are entitled to the discovery of work product. Therefore, the motion to compel is **GRANTED** as to

Entry Nos. 1-6, 9-52, 54, 56-73, 75, 78, 79, 82-86, 88, 89, 91, 92, 96, 97, 100-113, 119, 120, 122, 124, 127, 128, 130, 131, 135-141, 143, 144, 147-152, 154-156, 158-171.

a. "Claims Legal" Entries

Plaintiffs submit that Entry Nos. 7, 8, 53, 55, 74, 76, 77, 80, 81, 87, 90, 93-95, 98, 99, 114, 115, 121, 123, 125, 126, 132, 133, 134, 142, 153, and 157 are described as discussions with "claims legal" or with internal Progressive personnel. Docket No. 73 at 6. Further, Plaintiffs submit that Defendant must establish, entry by entry, that an actual lawyer participated and that the communication was for the purpose of legal advice rather than claim handling. *Id.* (citing *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 627 (D. Nev. 2013)).

Defendant contends that "Claims Legal" entries relate to Defendant's attorneys who are its own employees providing legal advice and guidance. Docket No. 78 at 8. Further, Defendant contends that these communications are also privileged and not subject to disclosure. *Id.*

In reply, Plaintiffs submit that Defendant's log repeatedly invokes "Claims Legal" without identifying the attorney, the subject matter, or the basis for finding that the primary purpose of the communication was legal advice rather than business or claim handling. Docket No. 80 at 7. Further, Plaintiffs submit that this failure is especially important for the post-trial entries because that was when Defendant was deciding whether to pay the full amended judgment, whether to continue leaving Martino exposed, how to react to a global demand, and how to handle the mounting bad faith problem of its own making. *Id.* Additionally, Plaintiffs submit that, on the face of the log, the Court cannot determine whether those emails contain actual legal advice or ordinary claim handling about payment posture and settlement. *Id.*

Plaintiffs have the better argument. From the privilege log, the Court cannot determine whether these entries contain actual legal advice or ordinary claim handling communications. Further, Defendant's contention that these entries relate to Defendant's attorneys, who are its own employees, providing legal advice is unpersuasive because the entries appear to be authored by non-attorney claims personnel. *See* Docket No. 78 at 30-51. Additionally, the Court finds that Defendant has impliedly waived attorney-client privilege into its communications with Insley-Micheri and Dennett Winspear and that Plaintiffs have sufficiently demonstrated that they are

entitled to the discovery of work product. Therefore, the motion to compel is **GRANTED** as to Entry Nos. 7, 8, 53, 55, 74, 76, 77, 80, 81, 87, 90, 93-95, 98, 99, 114, 115, 121, 123, 125, 126, 132, 133, 134, 142, 153, and 157.

b. Billing/Invoice Entries

Plaintiffs submit that Entry Nos. 116-118, and 129 concern questions and follow-up about a Dennett Winspear legal invoice, and that billing communications are not legal advice. Docket No. 73 at 6 (citing *Phillips*, 290 F.R.D. at 625).

Defendant contends that billing entries are not proportional to the needs of the case because there is no possible need for defense counsel's billing records. Docket No. 78 at 7. Further, Defendant contends that the billing records contain time entries along with costs incurred and fees and that this information has no bearing on whether Progressive breached a duty to settle pre-litigation. *Id.* Additionally, Defendant contends that this information contains business secret and/or propriety information related to attorney rates and should also be protected from discovery on that basis as well. *Id.*

Plaintiffs submit that a claim of proportionality or proprietary information is not attorney-client privilege, and it is not a proper basis for a privilege log entry, particularly where the parties agreed to a protective order. Docket No. 80 at 8.

Defendant has the better argument. It is unclear why Defendant's billing and invoice entries for counsel are important for resolving the issues in this matter. *See* Fed. R. Civ. P. 26(b)(1). Plaintiffs' briefing fails to provide specific argument as to this issue. Therefore, the motion to compel is **DENIED** as to these entries.

ii. <u>Communications Between Progressive and Dennett Winspear During Underlying Defense</u>

Plaintiffs submit these entries are emails and correspondence between Defendant and Insley-Micheri or her staff during the defense of Martino. Docket No. 73 at 6-7. Plaintiffs object to the withholding of Entry Nos. 173-181, 183, 185, 188, 189, 191, 193-196, 198-200, 202, 204, 207, 209, 212, 214, 215, 217-221, 223, 225-227, 230, 236, 237, 239. *Id.* Further, Plaintiffs submit that several entries within this grouping concern the offer-of-judgment and time-limit demand

cluster that lies at the heart of the bad faith claim. *Id.* at 7. Specifically, Plaintiffs submit that Entry Nos. 193-195 and 198-200 go directly to whether Defendant evaluated and acted on the opportunities to settle within policy limits. *Id.* Additionally, Plaintiffs submit that Entry Nos. 212, 215, 217, 219, and 223 contain the evaluations and recommendations central to whether Defendant acted reasonably. *Id.*

The Court finds that Defendant has impliedly waived attorney-client privilege into its communications with Insley-Micheri and Dennett Winspear and that Plaintiffs have sufficiently demonstrated that they are entitled to the discovery of work product. Therefore, the motion to compel is **GRANTED** as to Entry Nos. 173-181, 183, 185, 188, 189, 191, 193-196, 198-200, 202, 204, 207, 209, 212, 214, 215, 217-221, 223, 225-227, 230, 236, 237, 239.

iii. Internal Progressive Emails Involving "Claims Legal"

Plaintiffs submit that Entry Nos. 232-234 and 240 are described as internal post-trial emails between "Claims Legal" and Progressive personnel, and that Progressive's blanket "Claims Legal" recital does not satisfy its burden because the log identifies no participating attorney, no subject matter, and no basis from which the Court could find that legal advice was the primary purpose of any of these communications. Docket No. 73 at 8 (citing *Nguyen v. Shelter Mut. Ins. Co.*, 2025 WL 343174, at *4-5 (D. Nev. Jan. 29, 2025); *PlayUp, Inc. v. Mintas*, 2026 WL 1079397, at *1 (D. Nev. Apr. 21, 2026)).

These entries appear to be authored by Defendant's employee attorneys and are dated after the jury issued its verdict in the underlying litigation. *See* Docket No. 78 at 50-51 (author identified as "Claims Legal / Progressive" and dated July and August 2023). Further, the entries are described as internal emails regarding post-trial communications and handling and Defendant asserts attorney-client privilege as the basis for withholding them. *See id.* The Court is not convinced that these entries are relevant and proportional to the needs of the case. Further, Defendant's implied waiver of attorney-client privilege as to its communications with Insley-Micheri and Dennett Winspear do not apply to these communications. Therefore, the motion to compel is **DENIED** as to Entry Nos. 232-234 and 240.

iv. Payment Advice Entries

Plaintiffs submit that Entry Nos. 182, 184, 186, 187, 190, 192, 197, 201, 203, 205, 206, 208, 210, 211, 213, 216, 222, 224, 228, 229, 231, 235, 238, and 241 are each described as "Payment Advice" for attorneys' fees from Defendant to Dennett Winspear. Docket No. 73 at 8. Plaintiffs submit that payment advice related to insurance defense counsel are not communications for the rendition of legal advice. *Id.*

It is unclear why Defendant's payment advice entries are necessary to resolve the issues in this matter. *See* Fed. R. Civ. P. 26(b)(1). Plaintiffs' briefing fails to provide specific argument as to this issue. Therefore, the motion to compel is **DENIED** as to these entries.

v. Catch-All

Plaintiffs submit that, "[t]o the extent the foregoing inadvertently omits any numbered entry on Ex. 1, Plaintiffs object to every numbered entry from 1 through 241 on the grounds set forth in Section V, and request, alternatively, in camera review, but for the entries related to Mr. Keating." Docket No. 73 at 8. The Court declines to consider the sufficiency of privilege log entries through generalized argument. *See* Docket No. 70 at 3-4.

**E. Dennett Winspear Privilege Log**

Plaintiffs submit that the Dennett Winspear log invokes proprietary information, irrelevant information, and information pertaining to offers in compromise as if those were privileges, but they are not. Docket No. 80 at 8. Further, Plaintiffs submit that the Court directed the parties to address specific entries and the standards appliable to them and that Defendant has not carried its burden entry by entry. *Id.*

i. Relevance and Proportionality

Defendant contends that Plaintiffs' request for the claim files in Dennett Winspear's possession is neither relevant nor proportional to the needs of the case. Docket No. 78 at 13.

The Court finds that discovery into the Dennett Winspear Privilege Log is relevant and proportional because the strategy and mental impressions of Insley-Micheri are directly at issue in this case. *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (quoting *Reavis v. Metro. Prop. & Liab. Ins. Co.*, 117 F.R.D. 160, 164 (S.D. Cal. 1987)) ("In a bad

faith insurance claim settlement case, the 'strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue'").

ii. Attorney-Client Privilege

Defendant contends that it has legal cognizable attorney-client protections under the tripartite relationship with Dennett Winspear. Docket No. 78 at 13. Plaintiffs submit that Martino expressly waived privilege as to the Dennett Winspear file and the joint defense communications concerning his representation. Docket No. 80 at 9-10.

For the aforementioned reasons, the Court finds that Defendant has impliedly waived their right to assert attorney client privilege for the communications with attorney Insley-Micheri and the law firm Dennett Winspear.

iii. PROG 000001 – PROG 000222

Plaintiffs submit that these entries are correspondence between Defendant and Dennett Winspear, and are withheld pursuant to attorney-client privilege, attorney work product, proprietary information that does not relate to a claim or defense of any party and is not proportional to the needs of the case, and information pertaining to offers in compromise. Docket No. 73 at 8-9; *see also* Docket No. 73-3 at 2.

The Court finds that Defendant has impliedly waived attorney-client privilege into its communications with Insley-Micheri and Dennett Winspear and that Plaintiffs have sufficiently demonstrated they are entitled to the discovery of work product. Therefore, the motion to compel is **GRANTED** as to these entries.

iv. Claims 0000058

Plaintiffs submit that this entry contains correspondence between Defendant and Dennett Winspear that are withheld because of attorney-client privilege. Docket No. 73 at 9; *see also* Docket No. 73-3 at 2.

The Court finds that Defendant has impliedly waived attorney-client privilege into its communications with Insley-Micheri and Dennett Winspear. Therefore, the motion to compel is **GRANTED** as to this entry.

v. Claims 0000059 – 0000070

Plaintiffs submit that these entries contain the mental impressions of adjuster and are being withheld because they contain information pertaining to offers in compromise and the mental impressions of adjuster that do not relate to a claim or defense of any party and is not proportional to the needs of the case. Docket No. 73 at 9; *see also* Docket No. 73-3 at 2.

Defendant contends that attorney-client privilege protects disclosure of these claims. Docket No. 78 at 13.

The Court finds that Defendant has impliedly waived attorney-client privilege into its communications with Insley-Micheri and Dennett Winspear. Therefore, the motion to compel is **GRANTED** as to these entries.

vi. Claims 0000301

This entry appears to relate to insurance premiums and is being withheld because it contains information pertaining to liability insurance. *See* Docket No. 73-3 at 2-3. Plaintiffs fail to put forth any argument as to this claim entry. *See* Docket No. 73 at 9. Therefore, the motion to compel is **DENIED** as to this entry.

## IV. CONCLUSION

For the reasons provided above, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' motion to compel. Docket No. 73. The ordered discovery must be provided no later than September 14, 2026.

IT IS SO ORDERED.

Dated: August 17, 2026.

Nancy J. Koppe
United States Magistrate Judge